**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| DALE MOOG, on behalf of himself and all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:24-cv-00501-PTG-IDD |
| THE CHRISTIAN BROADCASTING NETWORK, INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT[1]**

### I.    INTRODUCTION

Plaintiff Dale Moog ("Plaintiff"), on behalf of himself and the members of the Settlement Class (defined below), and Defendant The Christian Broadcasting Network, Inc. ("CBN" or "Defendant," and collectively together with the Plaintiff, the "Parties") have reached a proposed Settlement in this Action. The Settlement will fully resolve this litigation (the "Action"), wherein Plaintiff alleges CBN violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by installing and running the Meta Pixel on its website, thereby disclosing consumers' personally identifiable information, which the VPPA defines as including information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider. Under the proposed Settlement, CBN will create a $4,000,000.00 non-reversionary cash fund (the "Settlement Fund") for the benefit of the Settlement Class. CBN also has agreed to

---

[1] While the Motion for Preliminary Approval is unopposed by Defendant, this memorandum is being offered by Plaintiff only, and for purposes of the settlement, Defendant currently takes no position on the factual statement and/or legal arguments made herein.

suspend operation of the Pixel on any pages of its websites relevant to VPPA compliance—i.e., webpages that both include video content and have a URL that identifies the video content viewed.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate and warrants preliminary approval. Plaintiff and his counsel have vigorously prosecuted this Action on behalf of the Settlement Class and—through extensive, arm's-length negotiations overseen by experienced mediator Hon. F. Bradford Stillman (Ret.)—have developed an understanding of the strengths and weaknesses of the Action. Notwithstanding his confidence in the merits of his VPPA claim, Plaintiff recognizes the challenges and risks inherent in proceeding through litigation and proving his claims at trial. The challenges and risks include certification of any class, CBN's defenses to liability, including but not limited to those arising under the statutory text and Plaintiff's consent to Facebook's terms of use and service, as well as any other defenses to any recovery of damages, and other affirmative defenses. The Settlement avoids those risks and provides immediate, meaningful, and robust monetary and injunctive relief to all members of the Settlement Class. After deduction of Court-awarded fees, expenses, service award, and administrative costs, Settlement Class Members who submit valid claims through a very simple claims process will each receive a pro rata share of the Net Settlement Fund.[2] Defendant denies all wrongdoing and any liability whatsoever, including the material allegations in the Amended Complaint. However, wishing to avoid the costs, expenses, and risks of litigation, Defendant similarly seeks to resolve the claims and limit further potential liability.

For the reasons set forth herein, Plaintiff respectfully requests that the Court: (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on

---

[2] Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement Agreement.

the proposed Settlement; (2) appoint Plaintiff as Class Representative for the Settlement Class; (3) appoint Bailey Glasser LLP and Carney Bates & Pulliam PLLC as Class Counsel; (4) approve the form and manner of notice and direct notice to the Settlement Class; and (5) schedule a hearing before the Court to determine whether the Settlement should be finally approved and to consider Plaintiff's request for attorneys' fees, litigation expenses, and a Service Award.

## II.    BACKGROUND

### A.  Overview of the Litigation

On March 28, 2024, Tyler Stricker filed a putative class action complaint against CBN in the United States District Court for the Eastern District of Virginia alleging violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. ECF No. 1. On April 17, 2024, Plaintiff filed an Amended Class Action Complaint (the "Amended Complaint") and changed the named plaintiff to Dale Moog. ECF No. 3. The material allegations of the Amended Complaint center on Defendant's alleged knowing disclosure of the Plaintiff's and Settlement Class Members' personally identifiable information ("PII"), as defined under the VPPA, to Meta Platforms, Inc. (formerly known as Facebook) ("Meta") without Plaintiff's and Settlement Class Members' informed, written consent by installing the Meta Pixel on its websites. Defendant denies these allegations.

On June 28, 2024, the Parties filed a Joint Motion for a Temporary Stay Pending Mediation, jointly requesting a stay of all pending deadlines for ninety (90) days, or until September 30, 2024, to allow the Parties to engage in a private mediation. ECF No. 8. On July 1, 2024, this Court granted the Parties' motion, entering a temporary stay pending mediation and vacating all deadlines. ECF No. 13. The Parties engaged in substantial, targeted pre-mediation discovery related to the Settlement Class Members and the alleged disclosure of Class Members' PII.

On September 10, 2024, the Parties attended an all-day mediation with the Honorable F. Bradford Stillman (Ret.). This mediation resulted in a settlement in principle, the terms of which are reflected in the Settlement Agreement submitted herewith and summarized below. Prior to the mediation, the Parties exchanged informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed. R. Evid. 408.

### B. The Proposed Settlement

#### 1. The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

> All persons in the United States who: (1) possessed and used login credentials for any of CBN's websites, and (2) requested or obtained video content from and/or through any of CBN's Services during the Class Period.[3]

Settlement Agreement ¶ 1.33. The Settlement Class specifically excludes: (1) any persons who have asserted claims against CBN under the VPPA prior to the date of this settlement through counsel other than Class Counsel; (2) any Judge or Magistrate Judge presiding over this Action and members of their families; (3) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, and attorneys; (4) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (5) the legal representatives, successors or assigns of any such excluded persons. *Id.*

The Settlement Class modifies the class definition alleged in Plaintiff's Amended Complaint, which defined the putative class as "all persons in the United States who requested or obtained audio visual material through their login with Defendant's Websites, and had a Facebook

---

[3] The Class Period is defined in the Settlement Agreement to mean the period from March 28, 2022 to and through May 28, 2024. *See* Settlement Agreement at ¶ 1.5.

Profile during the period any of the Pixels were active on Defendant's Websites." *See* ECF No. 3 ¶ 46. The modified Settlement Class includes approximately 207,000 individuals that were identified by CBN, through a review of its records, as having logged in to a CBN website and requested or obtained video content during the Class Period (*i.e.*, March 22, 2022 to and through May 28, 2024), and whose personal information may have been shared with third parties – including both Facebook and others -- via cookies. The Settlement benefits provided for in the Settlement and described below are based on the modified class definition and provide for a pro rata distribution to the Settlement Class Members. Further, under the Settlement, should the Settlement Class size increase by more than 10%, the Settlement Amount shall increase pro rata for each Settlement Class Member above 207,000. *See id.* ¶ 1.32.

2.  <u>Monetary Relief</u>

CBN has agreed to pay $4,000,000.00 to create a non-reversionary Settlement Fund for the benefit of Settlement Class Members. Settlement Agreement ¶¶ 1.32, 1.35, and 2.1. Settlement Class Members who submit valid claims will receive a pro rata payment after the deduction of settlement-related costs, including Settlement Administration Expenses, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. *Id.* ¶¶ 1.28, 1.30, and 2.1.

3.  <u>Business Practice Changes</u>

CBN also has agreed to implement meaningful business practice changes designed to address the alleged VPPA violations going forward. Within 45 days of the entry of Final Judgment, CBN will suspend operation of the Meta Pixel on any pages on its website that both include video content and have a URL that identifies the video content requested or obtained, unless and until the same is authorized or permitted by law, and/or the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on

5

the use of website pixel technology by the United States Supreme Court or the Fourth Circuit Court of Appeals. Nothing about this provision prevents CBN from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Meta Pixel. Likewise, nothing herein shall prohibit the use by CBN of the Meta Pixel where the disclosure of information does not identify specific video materials that a user has requested or obtained, or to engage in the use of other technology that does not violate the VPPA, or has been consented to by the user. Nothing about this provision prevents CBN from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Meta Pixel. *Id*. ¶ 2.5.

### 4. Release

In exchange for the relief described above, Plaintiff and the Settlement Class shall release all claims that have or could have been asserted against CBN, relating to the facts, transactions, or events alleged in this Action. *See id*. ¶ 1.25 (Released Claims), ¶ 1.26 (Released Parties), and ¶¶ 4.1–4.2 (Release).

### 5. Notice

The proposed notice plan (the "Notice Plan") was designed to provide the "best notice practicable" to Settlement Class Members, and as such, satisfies Rule 23 of the Federal Rules of Civil Procedure and due process. The Notice Plan includes dissemination of individual notice by email to all Settlement Class Members for whom a valid email address is available in the Class List. *Id*. ¶ 5.1.2. If deemed necessary by Class Counsel and Defendant's Counsel in consultation with the Settlement Administrator or otherwise directed by this Court, the Parties agree to discuss additional notice and/or means of notice, including, but not limited to, sending a reminder Notice via email, substantially in the form attached as Exhibit B to the Settlement Agreement (with minor, non-material modifications to indicate that it is a reminder email rather than an initial notice), to

all Settlement Class Members for whom a valid email address is available in the Class List. *Id*. ¶ 5.1.3. Additionally, Notice shall be provided on a case-specific settlement website that will include the ability to file Claim Forms online, and a toll-free telephone line with an interactive voice response ("IVR") system will be established to provide Settlement Class Members with responses to frequently asked questions and provide essential information regarding the Action. *Id*. ¶¶ 5.1.4-5.1.5.

6. Attorneys' Fees, Litigation Expenses, and a Service Award

Class Counsel may separately move for an award of attorneys' fees of up to one-third of the Settlement Fund and reimbursement of litigation expenses. Class Counsel may also request a service award of up to $5,000 for the Settlement Class Representative. *Id*. ¶¶ 6.1-6.5.

III.    ARGUMENT

In the Fourth Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Scott v. Fam. Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2018 WL 1321048, at *3 (W.D.N.C. Mar. 14, 2018); *see also Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation.") (citing *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)); *Haney v. Genworth Life Ins. Co.*, No. 3:22CV55, 2023 WL 2213420, at *2 (E.D. Va. Jan. 6, 2023).

Federal Rule of Civil Procedure 23(e) requires court approval of a proposed class action settlement upon a finding that the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2). Under the December 1, 2018 amendments to Rule 23(e), the preliminary approval process requires the Court to assess whether the parties have shown that "the court will likely be

able to: (i) approve the proposal under Rule 23(e)(2), and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii). Specifically, Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the foregoing, the Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2024 WL 1341122, at *9 (D.S.C. Mar. 29, 2024). When determining the fairness of a settlement, the Fourth Circuit has specified the following criteria: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *Id.*; *Jiffy Lube Securities Litig.*, 927 F.2d at 158-59 (same). Similarly, the Fourth Circuit has articulated the following factors when determining the adequacy of a settlement: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5)

the degree of opposition to the settlement." *Id.*; *In re Jiffy Lube*, 927 F.2d at 158-59. These factors overlap with Rule 23(e)'s consideration.

As outlined below, preliminary approval of the Settlement is warranted. First, the Court will likely be able to finally approve the proposed Settlement—calling for substantial monetary relief and business practice changes—as fundamentally fair, reasonable, and adequate. Second, the Court will likely be able to certify the Settlement Class at the final approval stage pursuant to Rule 23(a) and (b)(3). Accordingly, the Court should grant Plaintiff's motion for preliminary approval of the Settlement and direct notice to the Settlement Class.

### A. **The Settlement Is Procedurally Fair.**

The procedural fairness analysis under *Jiffy Lube* is intended to confirm that a settlement was "reached as a result of good-faith bargaining at arm's length, without collusion." 927 F.2d at 158-59; *Haney*, 2023 WL 2596845, at *1 (same). This is consistent with the Rule 23(e)(2)(A)-(B) considerations of the adequacy of the representation of the class and whether the settlement was negotiated at arm's length. *Haney*, 2023 WL 2596845, at *1. Consideration of these factors weighs in favor of a preliminary finding that the Settlement is procedurally fair.

#### 1. The Settlement Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted).

Here, Plaintiff's interests are aligned with the interests of Settlement Class Members as, during the Class Period, each possessed and used login credentials for CBN's websites(s), each viewed video content through CBN's Services, and each suffered the same alleged injury (the

improper disclosure of personally identifiable information without consent) and have the same interest in securing remedial and injunctive relief resulting in the cessation of the collection and possession of their personally identifiable information. Moreover, the monetary and remedial relief achieved in Settlement applies equally and uniformly to benefit all members of the Settlement Class. Thus, there is no conflict between Plaintiff and the members of the Settlement Class.

By similar token, Class Counsel have vigorously and adequately represented the Settlement Class. Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. Joint Declaration of Allen Carney and James L. Kauffman ("Joint Decl. of Class Counsel") at ¶¶ 3-6 and Exs. A and B (submitted herewith). Moreover, Class Counsel performed significant work in identifying, litigating, and negotiating the settlement of the claims in this Action, including engaging in extensive factual investigation; drafting the initial and amended complaints; engaging in informal discovery regarding the merits of Plaintiff's claim and class certification; and participating in a full-day mediation. *Id.* at ¶¶ 8-9, 21-23, 27. Accordingly, this factor weighs in favor of preliminary approval. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

     2.   <u>The Proposed Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Meditator After the Exchange of Informal Discovery</u>.

Under *Jiffy Lube*, considering the posture of the case, the extent of discovery, and the circumstances surrounding the negotiations "allows the Court to determine whether the case has progressed far enough to dispel any wariness of possible collusion among the settling parties."

*Brown*, 318 F.R.D. at 571 (E.D. Va. 2016) (citation and internal quotation marks omitted). It also "enables the Court to ensure that the case is well-enough developed for Class Counsel and . . . Plaintiffs alike to appreciate the full landscape of their case when agreeing to enter into th[e] Settlement." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). These factors overlap with Rule 23(e)(2)(B)'s consideration of whether the settlement was negotiated at arm's length. *See Donaldson v. Primary Residential Mortg., Inc.*, No. CV ELH-19-1175, 2021 WL 2187013, at *5 (D. Md. May 28, 2021). Under these criteria, the assistance of an experienced, neutral mediator weighs in favor of the reasonableness of the settlement. *See Lewis v. Precision Concepts Grp. LLC*, No. 1:18CV64, 2021 WL 7185505, at *3 (M.D.N.C. Mar. 23, 2021) (finding the participation of a neutral mediator supported a finding of the settlement being procedurally fair).

Here, the Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the adversarial nature of the negotiations; and the involvement of an experienced mediator. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). The Parties engaged in a private mediation before the Honorable F. Bradford Stillman (Ret.), an experienced mediator, to assist them in reaching the proposed Settlement. They prepared and reviewed detailed mediation statements and other supporting materials before participating in a day-long mediation. Even after reaching an agreement-in-principle, the Parties engaged in additional negotiations over the next several weeks to finalize the terms and conditions of the Settlement Agreement and the exhibits attached thereto. These efforts were unquestionably at arms-length and non-collusive. Moreover, the Settlement itself bears no indicia of collusion as attorneys' fees were negotiated separately after relief to the

11

class was determined, there is no "clear sailing" provision, and under no circumstances will any amount of the Settlement Fund revert to CBN. Joint Decl. of Class Counsel at ¶¶ 12, 26; *see also* Settlement Agreement ¶¶ 2.4, 6.1-6.5.

Further, although formal discovery did not take place, the Parties informally exchanged information prior to and during the mediation. That information included data bearing on the merits of Plaintiff's claims and the size of the class. *See* Joint Decl. of Class Counsel at ¶¶ 7-8, 15, 21. Thus, during negotiations, Class Counsel—attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—were well-informed about the strengths and risks of Plaintiff's claims, as well as their value. Further, the Parties exchanged sufficient information over the course of the mediation process to ensure that both sides were making an informed decision regarding the adequacy of the Settlement. *Id*.

Accordingly, this factor also supports a finding that the Court will likely be able to finally approve the Settlement and weighs in favor of preliminary approval.

**B.  The Settlement Is Substantively Fair, Reasonable, and Adequate.**

The relief offered to Settlement Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C)-(D) and *Jiffy Lube*.

This is a complex class action that has been and would continue to be very costly to litigate through trial. *See* Joint Decl. of Class Counsel at ¶¶ 8, 22. Had litigation continued, the Parties would likely have retained expensive forensics and other experts for class certification, summary judgment, and trial, resulting, at minimum, in protracted Daubert briefing. By reaching a favorable settlement with the assistance of a neutral mediator, the Parties avoided even more significant expense and delay.

Further, Plaintiff would face significant risks in establishing liability and damages if this Action were to proceed. Litigation inherently involves risks and uncertainty. *See Ciarciello v. Bioventus Inc.*, No. 1:23-CV-32, 2024 WL 3802990, at *1 (M.D.N.C. Aug. 13, 2024); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8443230, at *3 (N.D. Cal. Oct. 10, 2023) (discussing due-process concerns raised by statutory damages in the VPPA context). Though Plaintiff believes in the merits of his case, settlement here avoids this significant uncertainty while ending the challenged conduct and securing immediate monetary benefits.

Additionally, the risk of maintaining class status through trial in this Action is significant. The Court has not yet certified the case as a class action. Such a determination would only be reached after additional first- and third-party discovery, and exhaustive briefing. If the Court were to determine that statutory damages could not be imposed on a classwide basis, there is a risk that individualized damages determinations would overwhelm the common issues. And, even if the Court were to certify the Class (and deny efforts to decertify it thereafter), CBN would likely seek appellate review of this Court's interlocutory decisions, adding further delay. *See Robinson v. Nationstar Mortg. LLC*, No. 8:14-CV-03667-TJS, 2020 WL 8256177, at *4 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) (approving settlement as fair, reasonable, and adequate after consideration of risk of not maintaining class action status throughout trial).

The Settlement Agreement eliminates these risks while providing significant relief to the Settlement Class. Under the Settlement, approved claimants will receive a pro rata distribution of the $4,000,000.00 Settlement Fund after the deduction of notice and administration costs, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. There is no

13

preferential treatment for any members of the Settlement Class. In addition to monetary relief, the Settlement also includes valuable remedial relief—namely, that CBN will suspend operation of the Meta Pixel on any pages on its website that both include video content and have a URL that identifies the video content requested or obtained, unless and until the same is authorized or permitted by law, and/or the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Fourth Circuit Court of Appeals. Nothing about this provision prevents CBN from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Meta Pixel. Likewise, nothing herein shall prohibit the use by CBN of the Meta Pixel where the disclosure of information does not identify specific video materials that a user has requested or obtained, or to engage in the use of other technology that does not violate the VPPA, or has been consented to by the user. This is the same injunctive relief Plaintiff would have sought through trial. Class Counsel believe this is an exceptional result for the Settlement Class. *Luna v. Yummy, LLC*, No. 8:23-CV-01784-AAQ, 2024 WL 3554969, at *3 (D. Md. July 26, 2024) ("Counsel's opinion that the expense and potential duration of litigation weigh in favor of early settlement lends credence to a proposed settlement agreement.").

Under the Settlement, if Plaintiff's counsel are appointed Class Counsel, they will apply for attorneys' fees not to exceed one-third of the Settlement Fund plus reimbursement of reasonable litigation expenses. The Parties addressed the issue of attorneys' fees and expenses only after they had reached an agreement in principle with respect to the substantive terms of the Settlement, including the proposed monetary and injunctive relief. The Settlement Agreement is in no way contingent upon the Court's award of attorneys' fees and costs.

Accordingly, these factors sharply weigh in favor of preliminary approval.

**C.  The Court Will Be Able to Certify the Proposed Settlement Class.**

Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated) where the Court "will likely be able to" certify the class under Rule 23(a) and (b) for purposes of judgment on the proposed settlement. Fed. R. Civ. P. 23(e). Rule 23(a) provides:

> (a) Prerequisites to Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, Rule 23(b) provides, in relevant part:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . .

As set forth below, all the requirements of Rule 23(a) and (b) are met in this Action, justifying preliminary certification of the proposed Settlement Class for settlement purposes only.

### 1.  The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action." *Branch v. Gov't Employees Ins. Co.*, 323 F.R.D. 539, 546 (E.D. Va. 2018) (finding a class of 400 to be sufficiently numerous); William B. Rubenstein, 1 Newberg on Class Actions, § 3:12 (generally a class of more than 40 satisfies the numerosity requirement) (5th ed. 2018).

Here, there can be no doubt that the Settlement Class is sufficiently numerous. According to the data provided by CBN, there are approximately 200,000 potential Settlement Class Members geographically dispersed throughout the country who possessed and used a login during the time

period at issue to view videos on a CBN website. *See* Joint Decl. of Class Counsel at ¶ 15; *see also* Settlement Agreement ¶ 1.32. Joinder is therefore impracticable and Rule 23(a)(1) is satisfied.

### 2.    There Are Common Questions of Law and Fact.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although the rule speaks in terms of common questions, what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (internal quotation marks omitted). "Minor factual variances do not prevent a plaintiff from showing commonality as long as the claims arise from the same set of facts and the putative class members rely on the same legal theory." *Branch*, 323 F.R.D. at 546 (internal quotation marks omitted).

This Action presents numerous common questions of both law and fact that can be resolved on a classwide basis. Common questions include but are not limited to: (i) whether CBN knowingly disclosed Plaintiff's and Settlement Class Members' personally identifiable information; and (2) whether CBN's conduct violates the VPPA. Accordingly, Rule 23(a)(2) is satisfied.

### 3.    Plaintiff's Claims Are Typical of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *see also* Newburg on Class Actions, at § 3:29 ("The test for typicality is not demanding and focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom

they purport to represent.") (citation and internal quotation marks omitted). Thus, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. Typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Id*. at 467.

Here, CBN engaged in the same conduct, which Plaintiff alleges violates the VPPA, as to the Plaintiff and all potential Settlement Class Members. Thus, Plaintiff's claim arises from the same set of facts and the same theory of liability as the claims of the potential Settlement Class Members. Rule 23(a)(3) is therefore satisfied.

4. <u>Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class.</u>

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Similarly, Rule 23(g)(4) requires that "class counsel [will] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4). Adequacy is satisfied "if the named plaintiff does not have interests antagonistic to those of the class[,] and . . . plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Branch*, 323 F.R.D. at 549 (alteration in original) (internal quotation marks omitted).

The interests of Plaintiff and Class Counsel are not antagonistic to the Settlement Class. Plaintiff and the potential Settlement Class Members all (1) had and used logins to CBN's Services, and (2) requested or obtained video content on a website operated by CBN during the relevant time period. Therefore, Plaintiff's interests are in line with those of all potential Settlement Class Members, and there are no other cognizable, conflicting interests. Thus, Plaintiff will fairly and adequately protect Settlement Class Members' interests.

Moreover, as noted above and in the Joint Declaration of Class Counsel, Class Counsel have decades of experience in complex, nationwide class actions. *See id*. at ¶¶ 3-6 and Exs. A and B. Indeed, Class Counsel have served as Lead or Co-Lead Counsel in numerous class actions throughout the country, including privacy class actions such as this one. *Id*. Further, Class Counsel have demonstrated they are capable of and committed to achieving the best result for Plaintiff and the Settlement Class and have committed significant resources to the prosecution and settlement of this Action. Thus, Rule 23(a)(4)'s adequacy requirement is satisfied.

5.   The Settlement Class Satisfies Rule 23(b)(3).

Rule 23(b)(3) is satisfied when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

a.   *Common Questions of Law and Fact Predominate*.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Critically, Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010). "In other words, Rule 23(b)(3) compares the quality of the common questions to those of the noncommon questions." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 214 (E.D. Va. 2015) (citation and internal quotation marks omitted). "If the qualitatively overarching issue in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Id*.

Courts find predominance satisfied where a single, allegedly unlawful scheme is subject to common proof. *See Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 565 (E.D. Va. 1999) (finding common questions of law or fact predominate over any questions affecting only individual members). Here, Plaintiff alleges a common course of conduct whereby CBN knowingly disclosed Class Members' personally identifiable information. This is the "qualitatively overarching issue" in this Action. *Souter*, 307 F.R.D. at 214; *see also In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 926 (N.D. Ill. 2022), *appeal dismissed sub nom. In re TikTok Inc., Consumer Priv. Litig.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (finding predominance satisfied where class members alleges that they were all subjected to uniform data- and information-harvesting practices as a result of their use of defendant's app.). Thus, predominance is satisfied.

   *b. The Class Action Is Superior to Other Methods of Adjudication*.

  The Rule 23(b)(3) superiority test requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In adding . . . 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (second ellipsis in original) (citation omitted). "In determining whether the class action mechanism is truly superior the court should consider the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class

action." *Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 425 (E.D. Va. 2016) (internal quotation marks

omitted) (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).

      Applying Rule 23(b)(3) superiority factors to this Action makes clear that the class action

mechanism is the superior method of adjudication. There is no indication that any Settlement Class

Member wishes to pursue an individual action. To the extent any Settlement Class Member wishes

to pursue his or her own individual action, he or she can do so by opting out of the Settlement. *See*

*Thomas*, 312 F.R.D. at 426. Further, concentrating Settlement Class Members' claims in this forum

is desirable because there are approximately 200,000 potential Settlement Class Members who are

dispersed throughout the United States. *See* Joint Decl. of Class Counsel at ¶ 15; *see also*

Settlement Agreement ¶ 1.32. Furthermore, as explained in *Amchem*, "[c]onfronted with a request

for settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems . . .for the proposal is that there be no trial."

*Amchem*, 521 U.S. at 620. Thus, any manageability problems that may have existed in this case

are eliminated by the proposed Settlement.

### D. The Notice Plan Should Be Approved.

      Before a proposed class settlement may be finally approved, the Court "must direct notice

in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ.

P. 23(e)(1)(B). Where, as here, notice is to be provided to a settlement class certified under Rule

23(b)(3), the Court is required to "direct to class members the best notice that is practicable under

the circumstances, including individual notice to all members who can be identified through

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As clarified in the December 2018 amendments to

Rule 23, the best notice practicable under the circumstances can be accomplished by providing

notice through "electronic means" or other appropriate means. *Id*. Here, the proposed form and

manner of Notice satisfy these requirements and otherwise conforms to the standards of Rule 23(c)(2)(B).

Here, the Notice Plan includes direct email notice to all Settlement Class Members via the email address they used to create a login to CBN's Services; the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the Long-Form Notice, and other key case documents; and the establishment of a toll-free number where Settlement Class Members can get additional information. *See* Joint Decl. of Class Counsel at ¶¶ 16-17; *see also* Settlement Agreement at ¶¶ 5.1.2-5.1.7. Moreover, the proposed forms of notice (*see* Settlement Agreement, Exs. B & C) inform potential Settlement Class Members, in clear and concise terms, about the nature of this case, the Settlement, and their rights, including all of the information required by Rule 23(c)(2)(B). In addition, the Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Settlement Class and to direct financial payments to Settlement Class Members without requiring the submission of additional documents. *See* Settlement Agreement, Ex. D (Claim Form).

Accordingly, the form and manner of notice proposed here fulfills all of the requirements of Rule 23 and due process.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) find it will likely (a) approve the Settlement and (b) certify the Settlement Class for purposes of judgment on the proposed Settlement; (2) appoint Plaintiff as Class Representative for the Settlement Class; (3) appoint Bailey Glasser LLP and Carney Bates & Pulliam PLLC as Class Counsel; (4) approve the form and manner of notice and direct notice to the Settlement Class; and (5) schedule a hearing

before the Court to determine whether the Settlement should be finally approved and to consider

Plaintiff's request for attorneys' fees, litigation expenses, and a Service Award.

Dated: November 8, 2024                    Respectfully submitted,

                                           */s/ Nicholas Johnson*
                                           Nicholas Johnson (#76027)
                                           James Kauffman (admitted pro hac vice)
                                           BAILEY & GLASSER
                                           1055 Thomas Jefferson Street NW, Ste 540
                                           Washington, DC 20007
                                           Tel: (202) 463-2101
                                           Fax : (202) 453-2103
                                           Email: njohnson@baileyglasser.com
                                           Email: jkauffman@baileyglasser.com

                                           Allen Carney (admitted pro hac vice)
                                           Sam Jackson (admitted pro hac vice)
                                           CARNEY BATES & PULLIAM, PLLC
                                           1 Allied Drive, Ste 1400
                                           Little Rock, AR 72202
                                           Telephone : (501) 312-8500
                                           Facsimile : (501-312-8505
                                           Email : acarney@cbplaw.com
                                           Email: sjackson@cbplaw.com

                                           Counsel for Plaintiff Dale Moog
                                           and the Proposed Settlement Class