**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| DALE MOOG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CHRISTIAN BROADCASTING NETWORK, INC.,<br><br>Defendant. | Case No. 1:24-cv-00501-PTG-IDD |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP") and the Court's Order Granting Preliminary Approval of Class Action Settlement, dated January 29, 2025 (ECF No. 26) (the "Preliminary Approval Order"), Plaintiff Dale Moog ("Plaintiff" or "Settlement Class Representative") respectfully submits this memorandum of law in support of final approval of the proposed settlement (the "Settlement") of this class action (the "Action").

The Settlement[1] before the Court resolves all claims against Defendant The Christian Broadcasting Network, Inc. ("CBN" or "Defendant", and collectively together with the Plaintiff, the "Parties") in exchange for a cash payment of $4,000,000 (the "Settlement Fund") for the benefit of the Settlement Class.[2] None of the Settlement Fund will revert to Defendant. Instead, each

[1] The Settlement Agreement was previously filed with the Court on November 8, 2024 as part of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 24-2.
[2] All capitalized terms not defined herein are defined in the Settlement Agreement.

Settlement Class Member who submits a valid claim will be eligible to receive a *pro rata* distribution from the Settlement Fund. In addition to these monetary benefits, the Settlement requires CBN to suspend operation of the Meta Pixel ("Pixel") on any pages of its websites subject to compliance with the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA")—i.e., webpages that both include video content and have a URL that identifies the video content viewed.

This is an excellent Settlement, in the best interests of the Settlement Class, and satisfies the criteria for final approval as discussed herein. No Settlement Class Member or governmental entity has objected to date.[3] The Settlement is the product of arm's-length negotiations by experienced and informed counsel with a firm understanding of the strengths and weaknesses of their clients' respective claims and defenses, and it was reached only after extensive investigation of Plaintiff's claims and Defendant's defenses, substantial informal discovery, and a full-day mediation session.

Although Plaintiff is confident in the merits of the claims alleged, Defendant has defenses that add substantial risk to Plaintiff's ability to prevail at key benchmarks for the case -- class certification, interlocutory appeal thereof, motions to dismiss and for summary judgment, *Daubert* challenges, trial, and post-trial appeal. Accordingly, the terms and conditions of the Settlement were fairly negotiated and reflect a fully informed and fair compromise.

By separate motion, Class Counsel are requesting attorneys' fees of one-third of the Settlement, as well as reimbursement of litigation expenses in the amount of $12,011.79. Additionally, Plaintiff is requesting a service award in the amount of $5,000 for recognition of his service as the Settlement Class Representative. These amounts are fair and reasonable based upon, among other things, the time and labor expended; the results achieved; the novelty and difficulty

---

[3] The deadline for filing requests for exclusion and objections is April 29, 2025.

of the legal issues and technical matters presented; the skill and effort required to obtain such relief; the customary and contingent nature of the fee; the risks assumed; and awards in similar actions.

The notice plan for this action was successfully implemented in accordance with the Preliminary Approval Order and the Settlement Agreement, with notice reaching approximately 91% of the Settlement Class (to date) through individualized email notice, supplemented by a dedicated Settlement Website and call center. *See* Declaration of Andrea Dudinsky of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Dudinsky Declaration") at ¶¶ 4-10. Additionally, the Settlement enjoys the support of the Settlement Class. As stated above, as of April 11, 2025, no Settlement Class Member has filed an objection to the Settlement, and only one Settlement Class Member has filed a request for exclusion from the Settlement. *Id*. at ¶¶ 14-15.

Accordingly, Plaintiff respectfully submits that the Settlement satisfies all criteria for final approval, and specifically requests this Court: (i) grant final approval of the Settlement as fair, reasonable, and adequate; (ii) grant final certification to the Settlement Class; and (iii) find that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23(c) and due process and constitutes the best notice practicable under the circumstances.

## II. OVERVIEW OF THE LITIGATION AND SETTLEMENT

### A. Factual and Procedural Background of the Litigation

On March 28, 2024, Tyler Stricker filed a putative class action complaint against CBN in the United States District Court for the Eastern District of Virginia alleging violations of the VPPA. ECF No. 1. On April 17, 2024, Plaintiff filed an Amended Class Action Complaint (the "Amended

Complaint") and changed the named plaintiff to Dale Moog. ECF No. 3. The material allegations of the Amended Complaint center on Defendant's alleged knowing disclosure of the Plaintiff's and Settlement Class Members' personally identifiable information ("PII"), as defined under the VPPA, to Meta Platforms, Inc. (formerly known as Facebook) ("Meta") without Plaintiff's and Settlement Class Members' informed, written consent by installing the Meta Pixel on its websites. Defendant denies these allegations.

On June 28, 2024, the Parties filed a Joint Motion for a Temporary Stay Pending Mediation, jointly requesting a stay of all pending deadlines for ninety (90) days, or until September 30, 2024, to allow the Parties to engage in a private mediation. ECF No. 8. On July 1, 2024, this Court granted the Parties' motion, entering a temporary stay pending mediation and vacating all deadlines. ECF No. 13. The Parties engaged in substantial, targeted pre-mediation discovery related to the Settlement Class Members and the alleged disclosure of Class Members' PII.

On September 10, 2024, the Parties attended an all-day mediation with the Honorable F. Bradford Stillman (Ret.). This mediation resulted in a settlement in principle, the terms of which are reflected in the Settlement Agreement and summarized below. Prior to the mediation, the Parties exchanged informal discovery regarding the merits of the case and class certification under Fed. R. Civ. P. 23 and Fed. R. Evid. 408.

### B. Summary of the Settlement

#### 1. The Settlement Class

The Settlement Agreement defines the Settlement Class as follows:

> All persons in the United States who: (1) possessed and used login credentials for any of CBN's websites, and (2) requested or obtained video content from and/or through any of CBN's Services during the Class Period.[4]

[4] The Class Period is defined in the Settlement Agreement to mean the period from March 28, 2022 to and through May 28, 2024. *See* Settlement Agreement at ¶ 1.5.

Settlement Agreement ¶ 1.33. The Settlement Class specifically excludes: (1) any persons who have asserted claims against CBN under the VPPA prior to the date of this settlement through counsel other than Class Counsel; (2) any Judge or Magistrate Judge presiding over this Action and members of their families; (3) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, and attorneys; (4) persons who properly execute and file a timely request for exclusion from the Settlement Class; and (5) the legal representatives, successors or assigns of any such excluded persons. *Id*.

The Settlement Class modifies the class definition alleged in Plaintiff's Amended Complaint, which defined the putative class as "all persons in the United States who requested or obtained audio visual material through their login with Defendant's Websites, and had a Facebook Profile during the period any of the Pixels were active on Defendant's Websites." *See* ECF No. 3 at ¶ 46. The modified Settlement Class includes approximately 207,000 individuals that were identified by CBN, through a review of its records, as having logged in to a CBN website and requested or obtained video content during the Class Period (i.e., March 22, 2022 to and through May 28, 2024), and whose personal information may have been shared with third parties – including both Facebook and others -- via cookies. The benefits provided for in the Settlement and described below are based on the class definition and provide for *a pro rata* distribution to the Settlement Class Members.

2. <u>Monetary Relief</u>

CBN has agreed to pay $4,000,000.00 to create a non-reversionary Settlement Fund for the benefit of Settlement Class Members. Settlement Agreement at ¶¶ 1.32, 1.35, and 2.1. Settlement Class Members who submit valid claims will receive a *pro rata* payment after the deduction of

settlement-related costs, including Settlement Administration Expenses, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. *Id*. at ¶¶ 1.28, 1.30, and 2.1.

3. Business Practice Changes

CBN also has agreed to implement meaningful business practice changes designed to address the alleged VPPA violations going forward. Within 45 days of the entry of Final Judgment, CBN will suspend operation of the Meta Pixel on any pages on its website that both include video content and have a URL that identifies the video content requested or obtained, unless and until the same is authorized or permitted by law, and/or the VPPA is: (a) amended to expressly permit (and not prohibit) the Released Claims, (b) repealed, or (c) invalidated by a judicial decision on the use of website pixel technology by the United States Supreme Court or the Fourth Circuit Court of Appeals. Nothing about this provision prevents CBN from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Meta Pixel. Likewise, nothing shall prohibit the use by CBN of the Meta Pixel where the disclosure of information does not identify specific video materials that a user has requested or obtained, or engage in the use of other technology that does not violate the VPPA, or has been consented to by the user. Nothing about this provision prevents CBN from seeking to obtain VPPA-compliant consent in the future should it wish to reinstitute use of the Meta Pixel. *Id*. ¶ 2.5.

4. Release

In exchange for the relief described above, Plaintiff and the Settlement Class shall release all claims that have or could have been asserted against CBN, relating to the facts, transactions, or events alleged in this Action. *See id*. ¶ 1.25 (Released Claims), ¶ 1.26 (Released Parties), and ¶¶ 4.1– 4.2 (Release).

5. Notice to Settlement Class Members

In accord with Section V of the Settlement Agreement and the Court's Preliminary Approval Order, notice of the proposed Settlement to Settlement Class Members was made by email to all Settlement Class Members for whom a valid email address is available in the Class List. *See* Dudinsky Decl. at ¶ 9.

The Notice included the following information: (1) a description of the class action and the proposed Settlement, (2) the rights of Settlement Class Members, including the rights to request exclusion from the Settlement Class, to object to the Settlement, and to file a claim form, and instructions about how to exercise those rights, (3) specifics on the date, time and place of the Final Approval Hearing, and (4) information regarding Class Counsel's anticipated fee application and the anticipated request for the Settlement Class Representative service award. *See id.* at Ex. C.

The Notice also included a link for the Settlement Website, www.VideoClassAction.com, which included the following: (1) a more detailed Long Form Notice and Claim Form; (2) a "Contact Us" page with the Settlement Administrator's contact information; (3) important case documents, including the Settlement Agreement and the Court's Preliminary Approval Order; (4) important case dates and deadlines, including the deadlines to file a claim, opt out and object; (5) a summary of Settlement Class Members' options; and (6) the date, time, and location of the Final Approval Hearing. *See* Settlement Agreement at ¶ 5.1.4. Moreover, in accord with the Settlement Agreement and the Court's Preliminary Approval Order, Plaintiff's Motions for Final Approval of the Class Action Settlement and for Award of Attorneys' Fees, Litigation Costs, and a Service Award, along with the supporting memoranda, were posted on the Settlement Website.

6. Attorneys' Fees, Litigation Expenses, and a Service Award

In accord with the Settlement Agreement, Class Counsel is requesting an award of attorneys' fees equal to one-third of the Settlement Fund to compensate them for the work already performed in this case, all the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Class Counsel is also seeking reimbursement of their out-of-pocket litigation costs in the amount of $12,011.79, as well as a service award for the Settlement Class Representative, in the amount of $5,000, to compensate him for his work on behalf of the Settlement Class. *See* Plaintiff's Motion for Attorneys' Fees, filed contemporaneously herewith. The enforceability of the Settlement Agreement is not contingent on the Court's approval of Plaintiff's Motion for Attorneys' Fees, and any award granted by the Court will be paid out of the Settlement Fund.

## III. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT.

### A. Criteria to be Considered in Assessing Whether a Class Action Settlement Is Fair, Reasonable, and Adequate.

Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of class action claims. A class action should be approved if the court finds it "fair, reasonable, and adequate." *Id*. at 23(e)(2). Courts in the Fourth Circuit have recognized a strong policy favoring settlements, especially in class action cases. *See Scott v. Fam. Dollar Stores, Inc.*, No. 308CV00540MOCDSC, 2018 WL 1321048, at *3 (W.D.N.C. Mar. 14, 2018) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."); *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation.") (citing *In re Jiffy Lube Securities Litig.*, 927 F.2d

155, 158-59 (4th Cir. 1991)); *Haney v. Genworth Life Ins. Co.*, No. 3:22CV55, 2023 WL 2213420, at *2 (E.D. Va. Jan. 6, 2023) (same).

Rule 23(e)(2) provides that in determining whether a settlement is "fair, reasonable, and adequate," the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the foregoing, the Fourth Circuit "has developed multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2024 WL 1341122, at *9 (D.S.C. Mar. 29, 2024). When determining the fairness of a settlement, the Fourth Circuit has specified the following criteria: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *Id.*; *Jiffy Lube Securities Litig.*, 927 F.2d at 158-59 (same). Similarly, the Fourth Circuit has articulated the following factors when determining the adequacy of a settlement: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5)

the degree of opposition to the settlement." *Id.*; *In re Jiffy Lube*, 927 F.2d at 158-59. These factors overlap with Rule 23(e)'s consideration.

**B. The Settlement Is Procedurally Fair.**

The procedural fairness analysis under *Jiffy Lube* is intended to confirm that a settlement was "reached as a result of good-faith bargaining at arm's length, without collusion." 927 F.2d at 158-59; *Haney*, 2023 WL 2596845, at *1 (same). This is consistent with the Rule 23(e)(2)(A)-(B) considerations of the adequacy of the representation of the class and whether the settlement was negotiated at arm's length. *Haney*, 2023 WL 2596845, at *1. These factors weigh in favor of a finding that the Settlement is procedurally fair.

1. <u>The Settlement Class Was Adequately Represented</u>.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted).

Here, Plaintiff's interests are aligned with the interests of Settlement Class Members as, during the Class Period, each possessed and used login credentials for CBN's websites(s), each viewed video content through CBN's Services, and each suffered the same alleged injury (the improper disclosure of personally identifiable information without consent) and have the same interest in securing remedial and injunctive relief resulting in the cessation of the collection and possession of their personally identifiable information. Moreover, the monetary and remedial relief achieved in Settlement applies equally and uniformly to benefit all members of the Settlement Class. Thus, there is no conflict between Plaintiff and the members of the Settlement Class.

Further, Class Counsel have vigorously and adequately represented the Settlement Class. Class Counsel are highly qualified, have extensive experience and knowledge in prosecuting similar consumer class actions, particularly those involving privacy violations, including those under the VPPA. *See* Joint Declaration of Allen Carney and James L. Kauffman in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl. of Class Counsel I") at ¶¶ 3-6 and Exs. A and B. Moreover, Class Counsel performed significant work in identifying, litigating, and negotiating the settlement of the claims in this Action, including engaging in extensive factual investigation and forensic analysis of Defendant's website and its use of cookie and pixel technologies; drafting the initial and amended complaints; engaging in informal discovery regarding the merits of Plaintiff's claim and class certification; and participating in a full-day mediation. Joint Declaration of Allen Carney and James L. Kauffman in Support of Plaintiff's Motions for Final Approval of Class Action Settlement and Award for Attorneys' Fees, Litigation Costs, and Service Award ("Joint Decl. of Class Counsel II") at ¶¶ 8-9, 21-23, 27. Accordingly, this factor weighs in favor of final approval. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

2. <u>The Proposed Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Meditator After the Exchange of Informal Discovery</u>.

Under *Jiffy Lube*, considering the posture of the case, the extent of discovery, and the circumstances surrounding the negotiations "allows the Court to determine whether the case has progressed far enough to dispel any wariness of possible collusion among the settling parties." *Brown*, 318 F.R.D. at 571 (E.D. Va. 2016) (citation and internal quotation marks omitted). It also

"enables the Court to ensure that the case is well-enough developed for Class Counsel and . . . Plaintiffs alike to appreciate the full landscape of their case when agreeing to enter into th[e] Settlement." *In re The Mills Corp. Sec. Litig*., 265 F.R.D. 246, 254 (E.D. Va. 2009). These factors overlap with Rule 23(e)(2)(B)'s consideration of whether the settlement was negotiated at arm's length. *See Donaldson v. Primary Residential Mortg., Inc.*, No. CV ELH-19-1175, 2021 WL 2187013, at *5 (D. Md. May 28, 2021). Under these criteria, the assistance of an experienced, neutral mediator weighs in favor of the reasonableness of the settlement. *See Lewis v. Precision Concepts Grp. LLC*, No. 1:18CV64, 2021 WL 7185505, at *3 (M.D.N.C. Mar. 23, 2021) (finding the participation of a neutral mediator supported a finding of the settlement being procedurally fair).

Here, the Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the adversarial nature of the negotiations; and the involvement of an experienced mediator. *See In re NeuStar, Inc. Sec. Litig*., No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). The Parties engaged in a day-long private mediation before the Honorable F. Bradford Stillman (Ret.), an experienced mediator, to assist them in reaching the proposed Settlement. They prepared and reviewed detailed mediation statements and other supporting materials prior to the mediation. Even after reaching an agreement-in-principle, the Parties engaged in additional negotiations over the next several weeks to finalize the terms and conditions of the Settlement Agreement and the exhibits attached thereto. These efforts were at arms-length and non-collusive. Moreover, the Settlement itself bears no indicia of collusion as attorneys' fees were negotiated separately after relief to the class was determined, there is no "clear sailing" provision, and under no circumstances will any amount of

the Settlement Fund revert to CBN. *See* Joint Decl. of Class Counsel I at ¶¶ 12, 26; *see also* Settlement Agreement ¶¶ 2.4, 6.1-6.5.

Prior to mediation, Class Counsel performed extensive and detailed investigation of the facts supporting Plaintiff's allegations—facts which required intensive forensic analysis of backend website communications requiring highly specialized skills to identify individual network transmissions among hundreds to determine whether such internet communications violated the privacy of Plaintiff and the class members—and of the defenses available to Defendant, which are equally complex to the extent a large variety of factors can complicate issues of class certification and the merits of these kinds of cases. *See* Joint Decl. of Class Counsel II at ¶ 35.

Further, although formal discovery did not take place, the Parties informally exchanged information prior to and during the mediation. That information included data bearing on the merits of Plaintiff's claims and the size of the class. *See* Joint Decl. of Class Counsel I at ¶¶ 7-8, 15, 21. Thus, during negotiations, Class Counsel—attorneys with considerable experience in assessing the strengths and weaknesses of VPPA cases—were well-informed about the strengths and risks of Plaintiff's claims, as well as their value. Further, the Parties exchanged sufficient information over the course of the litigation and mediation process to ensure that both sides were making an informed decision regarding the adequacy of the Settlement. *Id*.

Accordingly, this factor also supports final approval of the Settlement.

**C. The Settlement Is Substantively Fair, Reasonable, and Adequate.**

The relief offered to Settlement Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C)-(D) and *Jiffy Lube*.

1. The Settlement Provides Meaningful Relief to the Settlement Class.

When determining if the relief provided for the Settlement Class is adequate, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). These factors are informed by the factors espoused in *Jiffy Lube*. Here, all factors weigh in favor of final approval.

*i. The Merits of Plaintiff's Case Balanced Against the Terms of the Settlement, and the Costs, Risks, and Delays of Continued Litigation Through Trial and Appeal.*

This is a complex class action that has been and would continue to be very costly to litigate through trial. *See* Joint Decl. of Class Counsel I at ¶¶ 8, 22. Had litigation continued, the Parties would likely have retained expensive forensics and other experts for class certification, summary judgment, and trial, resulting, at minimum, in protracted Daubert briefing. Plaintiff would also have to conduct formal discovery, which would involve the uncertain process of obtaining relevant information from CBN and pursuing subpoenas against third parties like Meta. By reaching a favorable settlement with the assistance of a neutral mediator, the Parties avoided even more significant expense and delay.

Further, Plaintiff would face significant risks in establishing liability and damages if this Action were to proceed. Litigation inherently involves risks and uncertainty. *See Ciarciello v. Bioventus Inc.*, No. 1:23-CV-32, 2024 WL 3802990, at *1 (M.D.N.C. Aug. 13, 2024); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC, 2023 WL 8443230, at *3 (N.D. Cal. Oct. 10, 2023) (discussing due-process concerns raised by statutory damages in

the VPPA context). Though Plaintiff believes in the merits of his case, settlement here avoids this significant uncertainty while ending the challenged conduct and securing immediate monetary benefits.

Additionally, the risk of maintaining class status through trial in this Action is significant. The Court has not yet certified the case as a class action. Such a determination would only be reached after additional first- and third-party discovery, and exhaustive briefing. If the Court were to determine that statutory damages could not be imposed on a classwide basis, there is a risk that individualized damages determinations would overwhelm the common issues. And, even if the Court were to certify the Class (and deny efforts to decertify it thereafter), CBN would likely seek appellate review of this Court's interlocutory decisions, adding further delay. *See Robinson v. Nationstar Mortg. LLC*, No. 8:14-CV-03667-TJS, 2020 WL 8256177, at *4 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) (approving settlement as fair, reasonable, and adequate after consideration of risk of not maintaining class action status throughout trial).

The Settlement Agreement eliminates these risks while providing significant monetary and non-monetary relief to the Settlement Class. Any Settlement Class Member that submits a valid claim is entitled to a *pro rata* share of the $4,000,000.00 Settlement Fund after the deduction of notice and administration costs, any court-awarded attorneys' fees and expenses, and any court-awarded Service Award. In addition to the monetary relief, the Settlement also includes valuable remedial relief—namely, that CBN will suspend operation of the Pixel on any pages on its website that both include video content and have a URL that identifies the video content requested or obtained, unless and until the same is authorized or permitted by law, and/or the VPPA is amended, repealed, or invalidated as described above. This is the same injunctive relief Plaintiff would have

sought through trial. Class Counsel believe this is an exceptional result for the Settlement Class, particularly as compared to settlements in similar cases. *See* Joint Decl. of Class Counsel II at ¶¶ 18-19; *see also Luna v. Yummy, LLC*, No. 8:23-CV-01784-AAQ, 2024 WL 3554969, at *3 (D. Md. July 26, 2024) ("Counsel's opinion that the expense and potential duration of litigation weigh in favor of early settlement lends credence to a proposed settlement agreement.").

*ii. Effectiveness of Any Proposed Method of Distributing Relief to the Class.*

The Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief to the class" be "effective." Under the Settlement, any Settlement Class Member who submits a valid claim is entitled to a *pro rata* share of the Net Settlement Fund (i.e. the Settlement Fund less any court-approved attorneys' fees and expenses, service awards, and costs of settlement notice and administration). The claims process involves a simple and straightforward Claim Form, written in plain language to encourage Settlement Class Members to file claims. The Claim Form is streamlined, requiring only the minimal information necessary to confirm membership in the Settlement Class and to direct financial payments to Settlement Class Members without requiring the submission of additional documents. *See* Settlement Agreement, Ex. D. Settlement Class Members are able to submit their Claim Forms online via the Settlement Website or through the mail. *See* Dudinsky Decl. at ¶ 8. Thus, the methods of processing Settlement Class Members Claim Forms and distributing relief to Settlement Class Members are effective and non-burdensome. As such, this factor weighs in favor of final approval.

*iii. The Requested Attorneys' Fees and Costs Are Reasonable, Reflective of the Quality of Counsel's Skills and Work, and In Line with Similar Awards Approved in the Fourth Circuit.*

As set forth in Plaintiff's Motion for Attorneys' Fees, Class Counsel is seeking an award of attorneys' fees equal to one-third of the Settlement Fund, plus reimbursement of reasonable

litigation expenses. Class Counsel's fee and expense requests are reasonable compared to the benefits Class Counsel have achieved for Settlement Class Members, the experience and ability of Class Counsel, and similar fee awards in the Fourth Circuit. *See* Plaintiff's Motion for Attorneys' Fees.

In addition to the foregoing, Plaintiff is also seeking award of a service award in the amount of $5,000 for serving as the Settlement Class Representative in this Action, which is both reasonable and consistent with similar awards approved in the Fourth Circuit. *See id.*

*iv. There Is No Agreement Required to Be Identified under Rule 23(e)(3).*

Rule 23(e)(2)(C)(iv) requires consideration of "any agreement required to be identified under Rule 23(e)(3)." There are no additional agreements outside of the Settlement Agreement that require identification under Rule 23(e)(3).

*v. Defendant's Financial Condition*

Defendant is a solvent company, and there is no indication that it will be unable to pay or will incur undue hardship because of the Settlement. Accordingly, consideration of Defendant's financial condition weighs in favor or is neutral to the fairness analysis.

2. <u>The Settlement Treats All Settlement Class Members Equitably.</u>

The Settlement is designed to benefit all Settlement Class Members equally and equitably, by providing equal access to the Settlement Fund and providing meaningful remedial relief to all Settlement Class Members regardless of whether they make a claim for monetary relief. Each Settlement Class Member may submit only one claim for monetary relief. Accordingly, each claimant that submits a valid claim will receive the same *pro rata* share of the Net Settlement Fund. Moreover, because the remedial relief occurs via CBN and is not user specific, all Settlement

Class Members are entitled to the same remedial relief. Thus, there is no unfair or preferential treatment of any Settlement Class Member, and this factor weighs in favor of final approval.

3. The Reaction of the Settlement Class Supports Final Approval.

To date, no Settlement Class Member has filed an objection to the terms of the Settlement, and only one Settlement Class Member has requested exclusion from the Settlement. *See* Dudinsky Decl. at ¶ 15. The Settlement Administrator has been processing claims as they are received, and as of April 11, 2025, has processed a total of 1,510 Claim Forms. *Id.* at ¶ 12. The Settlement Administrator will continue to process Claim Forms through the claims submission period, and Class Counsel will provide the Court with updated numbers at the expiration of that deadline and prior to the Final Approval Hearing.

The lack of opposition to the Settlement further weighs in favor of final approval. *See Mills*, 265 F.R.D. at 257 ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.").

## IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED.

In its Preliminary Approval Order, the Court previously determined that certification of the action for settlement purposes is appropriate. Specifically, the Court found that the Settlement Class satisfied each of the requirements of Federal Rule of Civil Procedure 23 in that (a) the Settlement Class is sufficiently numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to members of the Settlement Class that predominate over questions affecting only individual members (e.g., whether CBN unlawfully disclosed to third parties Plaintiff's and Settlement Class Members' personally identifiable information without consent in a manner that violated the Video Privacy Protection Act, 18 U.S.C. § 2710, and whether Plaintiff and the Settlement Class Members are entitled to uniform statutory damages under the

VPPA); (c) Plaintiff's claims are typical of the claims of the Settlement Class and Plaintiff and Class Counsel will fairly and adequately protect the interests of the Settlement Class; and (d) a settlement class action is the superior method for fairly and efficiently adjudicating this Action. *See* Preliminary Approval Order (ECF No. 26) at ¶ 7. For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## V. <u>THE METHOD AND FORM OF CLASS NOTICE SATISFIES RULE 23(e)</u>.

FRCP 23(e) requires that notice of a proposed compromise of a class action be given to all members of the class in such manner as the court directs. Generally, notice need only be "reasonably calculated, under the circumstances, to apprise the Settlement Class Members: (1) of the pendency of the Lawsuit; (2) of their right to exclude themselves from the Settlement Class and the proposed settlement; (3) that any judgment, whether favorable or not, will bind all Settlement Class Members who do not request exclusion; and (4) that any Settlement Class Member who does not request exclusion may object to the settlement and, if he or she desires, enter an appearance personally or through counsel." *Truesdale v. Nationwide Affinity Ins. Co. of Am.*, No. 1:11CV467, 2012 WL 12892879, at *6 (M.D.N.C. Oct. 19, 2012); *Stark v. Blue Cross & Blue Shield of N. Carolina*, 740 F. Supp. 3d 441, 444 (M.D.N.C. 2024) (same).

Here, notice was accomplished through direct email notice to all Settlement Class Members via the email address they used to create a login to CBN's Services; the establishment of a Settlement Website where Settlement Class Members can view the Settlement, the Long-Form Notice, and other key case documents; and the establishment of a toll-free number where Settlement Class Members can obtain additional information. *See* Joint Decl. of Class Counsel I at ¶¶ 16-17; *see also* Settlement Agreement at ¶¶ 5.1.2-5.1.7. Based on this notice plan, it is estimated that notice reached at least 91% of Settlement Class Members, which is consistent with

the range deemed reasonable by the Federal Judicial Center. *See* Dudinsky Decl. at ¶ 10; *see also* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (describing a notice plan as "reasonable" if it has a "reach between 70-95%").

Moreover, the content of the notices sufficiently advised Settlement Class Members of the essential terms of the Settlement; the rights of Settlement Class Members to share in the recovery, to request exclusion from the Settlement Class, or to object to the Settlement; and the date, time and place of the final approval hearing. Thus, the Notices provided the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notices also contained information regarding Class Counsel's application for attorneys' fees and reimbursement of litigation expenses, the proposed plan for allocating the Settlement proceeds among Settlement Class Members, and the application for a service award to the Settlement Class Representative.

In short, the form and manner of notice proposed here fulfill the requirements of FRCP 23 and due process.

## VI. CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court enter an order, substantially in the form of the forthcoming proposed Final Approval Order: (i) granting final approval of the Settlement as fair, reasonable, and adequate; (ii) granting final certification to the Settlement Class; and (iii) finding that the notice program as set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal

Rule of Civil Procedure 23 and due process and constitutes the best notice practicable under the circumstances.[5]

Dated: April 14, 2025

Respectfully submitted,

*/s/ Nicholas Johnson*
Nicholas Johnson (#76027)
James Kauffman (admitted *pro hac vice*)
BAILEY & GLASSER
1055 Thomas Jefferson Street NW, Ste 540
Washington, DC 20007
T: (202) 463-2101
F: (202) 453-2103
Email: njohnson@baileyglasser.com
Email: jkauffman@baileyglasser.com

Allen Carney (admitted *pro hac vice*)
Sam Jackson (admitted *pro hac vice*)
CARNEY BATES & PULLIAM, PLLC
1 Allied Drive, Ste 1400
Little Rock, AR 72202
T: (501) 312-8500
F: (501-312-8505
Email : acarney@cbplaw.com
Email: sjackson@cbplaw.com

*Counsel for Plaintiff Dale Moog*
*and the Proposed Settlement Class*

[5] Plaintiff will file a proposed Final Approval Order concurrent with his reply brief in support of this Motion. If there are no objections, Plaintiff will file the proposed Final Approval Order shortly after the deadline for filing objections.